## CIRCUIT COURT OF FAIRFAX COUNTY

Tina K. Cobb

    v.

Alan D. Hines

July 23, 2002

Case No. (Law) 196275

BY JUDGE KATHLEEN H. MACKAY

The issue addressed in this letter opinion is whether the defense put forward by Alan D. Hines in this case, involving a promissory note payable to Tina K. Cobb, was well grounded in fact and warranted by existing law as contemplated by Va. Code § 8.01-271.1.

### Chronology

The Motion for Judgment in this case was filed on June 13, 2001. The pleading alleges that the Defendant signed a promissory note wherein he promised to pay to Plaintiff the sum of $16,000.00 together with interest thereon at the rate of 7% payable at maturity. The note matured on April 2, 1993, or upon the sale of a piece of property owned by the Defendant, whichever occurred first. The motion alleged Defendant's default and asked for a judgment and appropriate interest, costs, and attorney's fees.

Defendant filed an answer on July 13, 2001, in which he admitted the liability but denied the Plaintiff's right to interest after the maturity date, as well as Plaintiff's right to fees or costs.

Plaintiff filed a Motion for Summary Judgment on September 7, 2001, and Defendant moved to be allowed to file an amended answer on September 10, 2001.

On September 21, 2001, Judge McWeeny granted Plaintiff a partial summary judgment stating that the promissory note was valid and granted the Defendant the right to file an amended answer. Judge McWeeny also granted the Plaintiff leave to amend her pleadings to ask for sanctions under Va. Code § 8.01-271.1.

On October 12, 2001, Defendant amended his answer by alleging that he did make payments on the note totaling $16,358.03 from January 1995 through October 1998. He admitted owing a balance of $6,075.13. In the course of discovery and trial, Defendant produced six checks showing payments made to Ms. Cobb.

The parties made a court appearance on April 5, 2002, on Plaintiff's Motion to Compel and that motion was worked out through a consent order.

The case was tried on April 17, 2002, without a jury. This Court found for the Plaintiff opining that: "there is not a scintilla of evidence on the Defendant's side, not a scintilla, other than his bold testimony. There is not a shred of documentary evidence on this. . . ."[1] (Transcript, p. 284.)

The Court continued the issue of sanctions to April 26, 2002, and, after hearing argument, took the matter under advisement.

*Plaintiff's Argument*

Plaintiff argues that she should be awarded her legal fees as a sanction against the Defendant pursuant to Va. Code § 8.01-271.1 because the Defendant signed pleadings that were not well grounded in fact and put forth a defense not warranted by existing law.

With regard to Defendant's assertion that he made payments against the note, Plaintiff makes several points. First, Defendant's assertion is at odds with his sworn testimony in a deposition taken in a related Chancery case on June 25, 2000.[2] In that deposition, Ms. Reese asked Mr. Hines why he had not made payment on the note. Mr. Hines replied that he thought the note would be null and void after six years of marriage and uncollectible. See Plaintiff's Exhibit # 12, pp. 219-20.

---

[1] The Court agrees with Mr. Anderson that a more correct finding would have been that the Court did not find the Defendant's evidence credible, as the Defendant did actually put on some documentary evidence, namely the checks themselves.

[2] Tina K. Cobb and Alan D. Hines were formerly married and were adversaries in the divorce case, Tina K. Cobb v. Alan D. Hines, Chancery No. 164117.

Second, Defendant's assertion is at odds with his sworn answers to interrogatories filed in the Chancery case dated September 20, 2000. In interrogatory number seven, Mr. Hines was asked to list his debts. He listed the full amount of the note as a debt. He does not record any payments that would have reduced the principal owing. See Plaintiff's Exhibit # 20, question seven.

Third, Defendant's assertion is at odds with his response to the request for production of documents in the Chancery case in which he produced Quicken reports which contain notations as to the checks in question, but fail to mention any applications of funds against the note. See Plaintiff's Exhibits 16, 17, 18, and 19.

Fourth, Defendant's assertion is at odds with his first Answer filed in this case in which he admitted liability for the full $16,000 with no reservations whatsoever.

### Defendant's Argument

The Defendant argues in his defense that his testimony at the deposition on June 25, 2000, was not clear as to whether he made any payments. In his response, he simply changed the subject, so to speak, by saying he relied on the note being eventually uncollectible.

The Defendant cannot really explain the discrepancy between his interrogatory answer of September 20, 2000, and his position in the Law case other than he simply did not recall the payments until after he had had a chance to go through his documents thoroughly. This task was accomplished after he had filed his first Answer in the case. At that point, he asked the Court to file an amended answer.[3]

Finally, the Defendant argues that, even if the Court decides that sanctions are appropriate, the fees generated by the Plaintiff's counsel are unreasonably high. Defendant offered to pay off the full amount of the note plus interest on February 28, 2002, and fees after that point should not be awarded.

---

[3] Ms. Reese would respond that this explanation is not credible since the Defendant provided the relevant documentation at the same time he responded to the interrogatories in the Chancery case, that he knew what the documentation illustrated at the time he responded to the interrogatories in question, and in any event, long before the Law case on the note was filed.

## Court's Findings

It goes without saying that it is the Court's function as the trier of fact to judge the Defendant's credibility at trial.

Defendant presented a series of checks at trial as evidence of his payments on the note. His counsel argued that the Defendant believed that he made the payments represented by the checks toward the note, yet the Defendant through his testimony could offer no convincing explanation of why these checks, as versus the many other checks produced in discovery, represented payments on the note. No notations in the Quicken reports supported his theory. He offered no particular narrative to back up his claim; he gave no context that supported his claim. Nor do the payments themselves make any particular sense. They are made out in odd amounts, even including cents at times, and at no particular time. His response to every question as to his theory with regard to every check is the same. He simply believed the particular check to be a payment on the note.

Plaintiff's arguments as to the applicability of Va. Code § 8.01-271.1 are clear. Defendant pleaded or made statements under oath that are a complete variance from his final position in this case. Defendant's testimony at trial was incredible in the true sense of the term, that is, not to be believed. It is impossible to avoid concluding that sanctions are appropriate. The question remaining is the one posed by Mr. Anderson. What amount of money would constitute a fair sanction? Would it be fair to require the Defendant to pay all of the Plaintiff's fees? Are Plaintiff's fees reasonable?

## Reasonableness of Fees

At the hearing on April 26th, the Plaintiff presented bills as to her attorney's fees totaling $25,983.35.[4] It is undisputed that on February 28, 2002, Defendant by letter expressed a willingness to settle the case for $26,000 which appears to be more or less the value of the note plus interest. Mr. Anderson did not tell the Court how Defendant arrived at this figure. It does not appear that attorney's fee reimbursement was a part of this offer. See Defendant's Exhibit # 1, presented on April 26, 2002.

Mr. Anderson stated that on April 5, 2002, he received a proposed "Consent Order" from Plaintiff's counsel which suggested that Defendant pay $39,000 as settlement as well as admit that he made false statements under

---

[4] The Court has marked this attorney's fee affidavit as Plaintiff # 1 for the hearing on April 26, 2002. Defendant presented two exhibits that day which were admitted.

oath. See Defendant's Exhibit # 2, presented on April 26, 2002. The offer of $39,000 appears to include the value of the note plus interest plus attorney's fees incurred by Plaintiff up until that point.[5]

The case did not settle. Mr. Anderson argues that, if I award fees, that I stop at this point since Plaintiff had an opportunity to settle and did not. He argues that the Plaintiff ran up her fees from this point forward.

From March 1, 2002, through trial, Plaintiff incurred an additional $13,500 in fees for a total of just about $26,000. In contrast, the payoff on the note was $27,000. Of course, this sum does not include fees spent by the Defendant on his case. Something is surely out of proportion here.

Sanctions as provided in Va. Code § 8.01-271.1 are designed to protect a litigant against, as the statute says, harassment or an attempt to increase the costs of litigation. *Gilmore v. Finn*, 259 Va. 448, 466, 527 S.E.2d 426 (2000). Sanctions are never routine. *Tonti v. Akbari*, 262 Va. 681, 553 S.E.2d 769 (2001). As I have tried to make clear, in this particular case, the Defendant's position was incredible and conflicted with positions he had taken previously under oath. He made a distinct decision to amend his answer. He had to go to some lengths to accomplish that. He made a definite decision to make this case a contested one. It is my judgment that he deserved in the legal sense to have sanctions levied against him. The method of calculation of such a sanction does not yield a precise figure since it appears to be a matter entirely of judicial discretion.

I do not know what happened between February 28 and April 5, 2002. I do not know why counsel were so far apart. I do not know if some midpoint was discussed. It seems to me that Mr. Anderson could have filed pleadings that flat out admitted his liability in order to staunch the bleeding of fees, a third answer so to speak. I do not know why Ms. Reese had to double her fees in the interval between March 1, 2002, and trial.

It seems to me that an appropriate sanction would be for the Defendant to pay Plaintiff's fees incurred through March 1, 2002. It seems to me to be reasonable for each party to bear their own fees from that point on, the offer of settlement being a watershed moment in the litigation.

---

[5] It appears that Plaintiff had incurred approximately $12,000 in fees as of March 1, 2002.